**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0164n.06
Filed: March 2,2006

**Case No. 04-6167**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| HENRY HODGES, | ) | |
| | ) | |
|    Petitioner-Appellee, | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE MIDDLE** |
| RICKY BELL, Warden, | ) | **DISTRICT OF TENNESSEE** |
| | ) | |
|    Respondent-Appellant. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

**BEFORE: BATCHELDER, DAUGHTREY, and COOK, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** Respondent-Appellant Ricky Bell ("Warden"), Warden of the Riverbend Maximum Security Institution ("RMSI") in Tennessee, appeals the district court's order in a habeas corpus action, pursuant to 28 U.S.C. § 2254, requiring RMSI to videotape all of its movements of Petitioner-Appellee Henry Hodges ("Hodges"). Generally, a federal court's authority in a habeas proceeding under § 2254 extends only to determining the legality of a petitioner's state-court conviction and sentence, and not to addressing the conditions of his confinement. See *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). In addition to habeas corpus, Hodges offers the All Writs Act, 28 U.S.C. § 1651(a), as authority for the district court's order. The All Writs Act allows federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Because a habeas corpus proceeding does not extend to the conditions of confinement, and because requiring

RMSI to videotape every instance in which its officers move Hodges is not "necessary or appropriate in aid of" the district court's jurisdiction to determine the legality of Hodges's state-court conviction and sentence, the district court's order lacks proper authority and must be vacated.

## I.

Hodges is a death-sentenced inmate seeking habeas relief. In January 1992, he pleaded guilty to the first-degree murder and aggravated robbery of Ronald Bassett, for which he was subsequently sentenced to death by a jury. After exhausting state remedies, Hodges filed a timely petition for a writ of habeas corpus in federal court on July 13, 2001, which he amended on March 15, 2002. On September 12, 2003, the Warden filed his response to Hodges's amended petition, and on October 22, 2003, the Warden and Hodges, through counsel, submitted to the court a Joint Proposed Pre-Trial Order.

No further action occurred until March 2004, when Hodges began filing pro se motions to dismiss his habeas petition and to have his death sentence carried out. The district court scheduled a hearing for April 22, 2004, to address Hodges's motions. In response, Hodges's attorneys filed several motions with the district court, including a Motion to Defer Ruling on Pro Se Motion to Dismiss Habeas Petition and to Continue Hearing Scheduled for April 22, 2004; a Motion for Protective Order Regarding Unconstitutional Conditions of Confinement; a Motion for Protective Order Regarding Disclosure of Confidential Records; and a Motion for Discovery "to fully investigate . . . prison conditions and Mr. Hodges' mental health." Hodges's lawyers contended that Hodges suffered from mental illness and was subjected to unconstitutional living conditions at RMSI. Most relevant to the issue before us, Hodges argues that his being transported and moved by guards armed with tasers and batons causes him anxiety, and that RMSI officers often pull on his

2

wrist shackles, thus causing him "psychological turmoil." Hodges's attorneys asked that the district court defer ruling on his pro se motions to dismiss "until the matters concerning Petitioner's living conditions and mental health treatment are resolved," and presented the court with a typed declaration by Hodges, stating, "I don't want to die. I just can't take the way they treat me anymore . . . [I]f the judge could do something about the way they treat me out here, then my motion to dismiss might not be necessary."

At the April 2004 hearing, the district court asked Hodges how he wished to proceed. He said simply that he wanted the Warden to "leave [him] alone." Hodges never indicated at the hearing that he wanted to dismiss his habeas petition. The district court determined that its inquiry into Hodges's living conditions went to the competency and voluntariness of his motion to dismiss his habeas petition, and thus that it was appropriate in the context of the habeas proceeding. Therefore, the district court ordered that the Warden submit a response to Hodges's allegations of unconstitutional living conditions.

During a June 4, 2004, hearing regarding the Warden's detailed written report on the conditions at RMSI and Hodges's allegations,[1] the district court questioned the Warden directly. The Warden testified as to the general living conditions and policies at RMSI. The most important exchange for purposes of this appeal occurred when the judge asked the Warden if he had "any objections to videotaping" Hodges to which the Warden responded, "I can do that." The district court ordered discovery for all of Hodges's confinement issues that were not rendered moot by the Warden's testimony. Throughout the proceedings, the Warden consistently objected to the extensive inquiry being conducted by the district court on grounds that the inquiry fell beyond the court's

---

[1]The district court refused to accept the Warden's report, which had been submitted through counsel, and summoned the Warden to appear before the court forthwith. The Warden complied with that order.

habeas jurisdiction.

On September 7, 2004, Hodges's counsel filed a Verified Emergency Motion for Temporary Restraining Order and for Injunctive Relief, alleging that Hodges was in a state of psychosis and needed to be transferred immediately to a special needs correction facility. Hodges's counsel stated that she had observed him and noticed alarming changes in his demeanor, and that when she conveyed this to a neuropsychiatrist who had previously evaluated Hodges, the doctor characterized this as a "medical emergency." Hodges's motion requested that he be transferred to a special needs unit for treatment, that his movement to special needs be videotaped, that Hodges be informed as to where he was being moved, and that the Warden and his agents cease harassing him. At the hearing on the motion, Hodges's counsel indicated that videotaping is important to relieving Hodges's anxiety, in part because he had been beaten by guards on two prior occasions. On September 10, 2004, the district court issued an order requiring, *inter alia*, the following:

> Respondent shall direct that any movement of Petitioner, Henry Hodges, by prison staff be video-taped. Video-taping shall begin as the corrections officers approach the cell and continue until Mr. Hodges has been transferred. At no time shall any person selectively turn off and on the video-camera.

The Warden moved for a stay of this order pending appeal, which was denied, and the Warden has videotaped all of RMSI's movements of Hodges since the order was issued. The Warden now appeals the district court's order, specifically challenging–on jurisdictional grounds–the district court's requiring the video-taping of all of Hodges's movements.

## II.

Hodges contends that we lack jurisdiction to consider this interlocutory appeal because the district court's order is not a final order pursuant to 28 U.S.C. § 1291, and is not otherwise subject to review under 28 U.S.C. § 1292. Hodges is mistaken. Section 1292(a)(1) grants courts of appeals

4

jurisdiction to review "[i]nterlocutory orders of the district courts of the United States granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions . . . ." For purposes of interlocutory appellate jurisdiction under § 1292, an interlocutory order is injunctive in nature when it temporarily awards or denies a part or all of the injunctive relief sought by the claimant. *American Motors Corp. v. FTC*, 601 F.2d 1329, 1331 (6th Cir. 1979). Hodges's counsel filed a "Verified Emergency Motion For Temporary Restraining Order And Injunctive Relief," requesting, *inter alia*, that the court order Hodges's movements to be videotaped. The district court's order granted the videotaping that Hodges sought and did not specify the duration or any endpoint for such videotaping. Under the circumstances, it seems that the district court's order would require such videotaping for as long as the court has jurisdiction over his habeas petition. Thus, the district court's order constitutes injunctive relief, and § 1292 grants the court of appeals jurisdiction to review the injunction.

### III.

As the Supreme Court has made clear, "federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C § 2254, and a complaint under the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983." *Muhammad v. Close*, 540 U.S. 749 (2004). At the time that the district court ordered the injunctive relief concerning the conditions of Hodges's confinement, Hodges did not – and, indeed, he still does not – have a § 1983 action pending. Rather, the district court noted that habeas jurisdiction authorized taking steps to inquire into the competence and voluntariness of any decision by Hodges to dismiss his habeas petition. Such an inquiry, however, does not extend to ordering the Warden to videotape Hodges's movements, which Hodges sought to allay his anxiety, and not for purposes of discovery.

5

In *Nelson v. Campbell*, 541 U.S. 637, 643 (2004), the Supreme Court reiterated that "constitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core [of habeas corpus] and may be brought pursuant to § 1983 in the first instance." See also *Muhammed v. Close*, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." (internal citation omitted)).[2] Hodges's complaints about the conditions of his confinement, and the videotaping that the district court ordered in response thereto, do not in any way implicate the validity of his conviction or duration of his state-court sentence. Instead, the district court's order requiring the Warden to videotape any of Hodges's movements by prison officials concerns only "relief turning on circumstances of confinement . . . ." *Muhammed v. Close*, 540 U.S. at 750 (2004). As such, Hodges's allegations are a proper subject for a § 1983 action, but fall outside of the cognizable core of habeas corpus relief. Because the forum of the habeas proceeding did not, by itself, grant the district court jurisdiction to adjudicate Hodges's conditions-of-confinement claims, or to order injunctive relief in response thereto, we must find

---

[2]The Fifth Circuit has held that "Generally, section 1983 suits are the proper vehicle to attack unconstitutional conditions of confinement and prison procedures," whereas a habeas petition is the proper vehicle for seeking release from incarceration. *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997). The Seventh Circuit likewise has distinguished between habeas corpus and § 1983 actions as follows:

> For most purposes, the line between the domain of collateral review and that of §1983 is simple. State prisoners who want to challenge their convictions, their sentences, or administrative orders revoking good-time credits or equivalent sentence-shortening devices, must seek habeas corpus, because they contest the fact or duration of custody. State prisoners who want to raise a constitutional challenge to any other decision, such as transfer to a new prison, administrative segregation, exclusion from prisoner programs, or suspension of privileges, must instead employ § 1983 or another statute authorizing damages or injunctions . . . .

*Moran v. Sondalle*, 218 F.3d 647, 650-51 (7th Cir. 2000) (internal citation omitted). See also *Williams v. Hopkins*, 130 F.3d 333, 335-36 (8th Cir. 1997) ("Claims challenging the conditions of confinement may be asserted through a § 1983 cause of action. However, a state prisoner challenging the fact or duration of a sentence of imprisonment and seeking immediate or speedier release has a federal remedy through habeas corpus and cannot bring a claim under § 1983.").

another source of jurisdiction if we are to uphold the district court's order mandating videotaping.

Hodges offers the All Writs Act, 28 U.S.C. § 1651, as that jurisdictional source. We review de novo a district court's assertion of jurisdiction under the All Writs Act. *United States v. Perry*, 360 F.3d 519, 533 (6th Cir. 2004). Section 1651(a) grants the federal courts the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The Supreme Court has interpreted this provision to give federal courts the power "to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Telephone Co.*, 434 U.S. 159, 172 (1977). "Unless appropriately confined by Congress, a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." *Id.* at 172-73 (internal quotation omitted). The Court has also emphasized that "these supplemental powers are not limited to those situations where it is 'necessary' to issue the writ or order in the sense that the court could not otherwise physically discharge its appellate duties." *Id.* at 173 (internal quotation omitted).

The Supreme Court has frequently upheld federal court actions under the All Writs Act. In *Price v. Johnston*, 334 U.S. 266 (1948), the Supreme Court held that the precursor statute to § 1651 supplied the authority for a federal appeals court to issue an order commanding that a prisoner be brought before the court for the purpose of arguing his own habeas corpus appeal. In *United States v. Hayman*, 342 U.S. 205, 220-22 (1952), the Court held that in order to avoid frustrating the very purpose of 28 U.S.C. § 2255, the All Writs Act authorized a district court to order that a federal prisoner be produced in court for purposes of a hearing. In *Harris v. Nelson*, 394 U.S. 286 (1969),

7

the Court held that, despite a lack of specific statutory authority, § 1651 gave a district court the authority to issue a discovery order in connection with a habeas corpus proceeding pending before it when the discovery was essential to render the habeas corpus proceeding effective.[3] Finally, in *United States v. New York Telephone Co.*, 434 U.S. 159 (1977), the Court held that § 1651 provided a district court the authority to compel a third-party telephone company to provide federal law-enforcement officials the facilities and technical assistance necessary for the implementation of its order authorizing the use of pen registers to investigate offenses which there was probable cause to believe were being committed by means of the telephone.

Since *New York Telephone*, however, the Supreme Court has limited the scope of the All Writs Act. In *Pennsylvania Bureau of Correction v. United States Marshals Service*, 474 U.S. 34 (1985), the Court held that, absent a finding of exceptional circumstances, § 1651 did not grant the federal courts the authority to order federal marshals to transport state prisoners so that they could appear to testify in § 1983 proceedings in federal court. The Court characterized § 1651 as "filling the interstices of federal judicial power when those gaps threatened to thwart the otherwise proper exercise of federal courts' jurisdiction." *Id.* at 41. But the Court proceeded to make clear that the "All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute," and that "[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Id.* at 43. The Court also emphasized that

---

[3]Although the district court's order to videotape Hodges's movements arguably resembles an order pursuant to discovery, namely, to verify or disprove allegations of prison officials beating Hodges, *Harris v. Nelson* nevertheless limits the use of § 1651in the habeas-discovery context to claims specifically related to "such proceedings [in which] a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law." 394 U.S. 286, 292 (1969). *Harris* addressed only "the existence of rights for those in custody to discover facts which may aid their petitions for release." *Id.* The district court's order to videotape does not go toward the discovery of any facts which may aid Hodges's petition for release.

although § 1651 "empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Id. See also Harris v. Nelson*, 394 U.S. 286 (1969)(limiting the broad All Writs Act authority in habeas proceedings to cases "where specific allegations before the court show reason to believe that the petitioner may . . . be able to demonstrate *that he is confined illegally and is therefore entitled to relief. . . .*") (emphasis added)). Because the relevant statutes granted federal courts only the authority to compel state custodians to transport prisoners, and because there were no exceptional circumstances to warrant ordering federal marshals to do so, the Court held that the All Writs Act did not provide the district court such authority. In *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002), the Supreme Court continued to rein in § 1651, and held that the All Writs Act cannot provide the basis for removal jurisdiction. In so doing the Court emphasized that § 1651 is not an independent font of jurisdiction, and that where a separate statute specifically addresses the issue at hand, it is that statute, and not the All Writs Act, that governs. *Id.* at 32-34.

The Supreme Court's § 1651 jurisprudence provides us with two basic lines of inquiry: first, whether the federal court's action is in aid of its jurisdiction, and second, whether such action is specifically covered by a separate statute. In the habeas cases of *Price*, *Hayman*, and *Harri*s, no specific statute governed the relief sought, and each court determined that the relief at issue (a prisoner's appearance or discovery requests) was appropriate in order to allow the lower court to perform its statutory duty of determining the legality of the prisoner's conviction or sentence. Similarly, in *New York Telephone*, the Court determined that no specific statute conflicted with the relief sought, and that requiring the telephone company to install the pen registers was an

9

appropriate order in aid of the district court's proper jurisdiction over an FBI investigation supported by probable cause. In *Pennsylvania Bureau of Correction*, however, the Court determined that a separate statute governed the issue at hand (making state custodians responsible for transporting prisoners), and that there was no requisite showing of "exceptional circumstances" to justify the court's abandoning those strictures for mere convenience. 474 U.S. 34, 43 (1985). Similarly, in *Syngenta*, the Court determined that the removal statute specifically governed the jurisdictional question and therefore precluded the district court from using the All Writs Act to create jurisdiction.

In the instant case, the district court had habeas jurisdiction under 28 U.S.C. § 2254 to hear Hodges's claims, so we do not face a *Syngenta*-type problem in which a court attempts improperly to use the All Writs Act to create jurisdiction *ex nihilo*. Nonetheless, the All Writs Act does not support the district court's order to videotape Hodges. The videotaping order cannot be fairly characterized as being "necessary or appropriate in aid of" the court's habeas jurisdiction to determine the legality of Hodges's conviction or sentence. The videotaping was sought, and presumably ordered, to reduce Hodges's anxiety so as to improve his living conditions. The injunctive order was not sought or designed to examine the legality of his conviction or sentence. Rather, it aimed solely to ameliorate Hodges's "psychological turmoil" and fear of the prison guards armed with tasers and batons.

Hodges's complaints and allegations of mistreatment and the conditions of his confinement, therefore, are governed by and may be redressed pursuant to § 1983. Hodges may seek relief under the administrative strictures of § 1983, strictures which Hodges and his attorneys have yet to follow, and which the district court failed to recognize as the appropriate avenue for remedy. Sanctioning use of the All Writs Act to grant Hodges's desired relief within the narrow confines of a habeas

10

proceeding would expand the use of § 1651 so as to avoid the specific statutory requirements of § 1983 that would otherwise govern Hodges's claims regarding his confinement conditions. In effect, the district court's order improperly granted Hodges relief regarding his conditions of confinement without his ever demonstrating, or the district court's ever finding, a constitutional violation as § 1983 requires. Federal courts, however well-intentioned, may not so intrude upon the functioning of state institutions without following the prescribed statutory procedures and without making the specific findings that federal law requires.

## IV.

Accordingly, we **VACATE** the district court's order requiring videotaping on the grounds that such order exceeded the court's jurisdiction.

11

DAUGHTREY, Circuit Judge, dissenting.

In this case, the district court had obtained jurisdiction over the petitioner's case when the habeas petition was filed in 2001. The basis for the order of the district court now challenged on appeal can be traced to the petitioner's pro se motion to withdraw his petition and forego further appeals, thereby expediting his execution. As a result, the district court found it necessary to determine whether the petitioner was competent to withdraw his petition on his own motion.

Following counsel's investigation of the circumstances surrounding the petitioner's decision to drop his federal habeas litigation, the district court was faced with a claim that oppressive conditions of confinement on death row at the Riverbend Prison had precipitated the filing of the petitioner's pro se motion. The order at issue here was clearly entered in an effort to identify and possibly ameliorate conditions that might be relevant to the petitioner's mental state and the voluntariness of his decision to expedite his own execution. To the extent that the record might establish a connection between conditions at the prison and the petitioner's competency to withdraw his habeas petition, the authority of the district court to issue relevant orders would not seem to be subject to question.

The problem here is that the district court's order did not contain any factual findings to support a conclusion that continued videotaping was necessary to a determination of competency. Nor did the order contain a discussion of the factors prescribed for the issuance of an injunction. I would therefore remand the case to allow the district court to enter a clarifying order.