RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0196p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

RAYMOND A. TWYFORD, III,

               *Petitioner-Appellee,*

    *v.*

TIM SHOOP, Warden,

               *Respondent-Appellant.*

> No. 20-3346

───────────────

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:03-cv-00906—Algenon L. Marbley, Chief District Judge.

Argued: April 8, 2021

Decided and Filed: August 26, 2021

Before: BATCHELDER, MOORE, and COLE, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Zachery P. Keller, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Michael J. Benza, LAW OFFICE OF MICHAEL J. BENZA, INC., Chagrin Falls, Ohio, for Appellee. **ON BRIEF:** Zachery P. Keller, Benjamin M. Flowers, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Michael J. Benza, LAW OFFICE OF MICHAEL J. BENZA, INC., Chagrin Falls, Ohio, Alan C. Rossman, Sharon A. Hicks, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellee.

    MOORE, J., delivered the opinion of the court in which COLE, J., joined. BATCHELDER, J. (pp. 14–16), delivered a separate dissenting opinion.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.  Tim Shoop, the warden of the Chillicothe Correctional Institution, appeals from the district court's order ("transport order") requiring the warden to transport Raymond Twyford, an Ohio death-row inmate, to The Ohio State University Wexner Medical Center, affiliated with the Ohio Department of Rehabilitation and Correction, for neurological imaging (a CT/FDG-PET scan) in support of his petition for a writ of habeas corpus.  The district court issued the transport order under the All Writs Act, 28 U.S.C. § 1651, in aid of its jurisdiction over Twyford's habeas petition.  For the following reasons, we hold that we have jurisdiction under the collateral-order doctrine to review the warden's appeal, and we **AFFIRM** the district court's transport order.

## I. BACKGROUND

An Ohio jury convicted Twyford of aggravated murder and sentenced him to death in 1993.[1]  In January 2003, Twyford filed a federal habeas petition raising twenty-two claims for relief.  R. 13 (Pet. for Writ of Habeas Corpus) (Page ID #2–205).  The district court stayed Twyford's case pending completion of litigation regarding his state application to reopen his direct appeal.  R. 38 (12/30/04 Order) (Page ID #379–85).  After the Ohio Supreme Court affirmed the denial of Twyford's application to reopen his direct appeal, *State v. Twyford*, 833 N.E.2d 289, 290 (Ohio 2005), the district court returned Twyford's case to the active docket, *see* R. 49 (Oct. 2005 Status Rep.) (Page ID #408–09).  In 2008, the Warden moved to dismiss some of Twyford's claims as procedurally defaulted.  R. 78 (Warden's Mot. to Dismiss Procedurally Defaulted Claims) (Page ID #510–39).  The district court granted the warden's motion in part.  R. 93 (09/27/17 Order at 74) (Page ID #765).

This brings us to the subject of this appeal.  In November 2018, Twyford requested leave to file *ex parte* and under seal a motion to transport for medical testing, R. 101 (Mot. for Leave

---

[1]The facts and legal proceedings surrounding Twyford's conviction and death sentence are detailed in *State v. Twyford*, 763 N.E.2d 122, 128–31 (Ohio 2002).

to File Mot. to Transport *Ex Parte*) (Page ID #6998–7003), which the district court denied in light of the need for transparency, R. 105 (03/15/19 Order at 3–4) (Page ID #7017–18).  Twyford then filed a motion to transport for neurological imaging.  Twyford noted that he may have neurological problems due to childhood physical abuse, alcohol and drug use, and a self-inflicted gunshot wound to his head from a suicide attempt at age thirteen, which cost him his right eye and left shrapnel remaining in his head.  R. 106 (Mot. to Transport for Medical Testing at 3) (Page ID #7021).  In support of the motion, Twyford submitted a letter from Dr. Douglas Scharre, a neurologist and the director of the Cognitive Neurology Division at The Ohio State University Wexner Medical Center ("OSU"), which stated that Dr. Scharre had evaluated Twyford, reviewed his medical records, and concluded that a CT scan and an FDG-PET scan were necessary for him to evaluate Twyford fully.  R. 106-2 (Letter from Dr. Scharre) (Page ID #7088).  Twyford requested that the warden transport him to OSU for this imaging because the Chillicothe Correctional Institution, where Twyford is incarcerated, does not have the equipment to perform this imaging.[2]  R. 106 (Mot. to Transport for Medical Testing at 4) (Page ID #7022).  He submits that the neurological imaging is necessary for his case because:

> [g]iven the issues in Mr. Twyford's petition relating to his family history, mental health issues, and the impact of his suicide attempt (see Claims for Relief Nos. 1 (Ineffective Assistance of Counsel), 4 (Involuntary and Coerced Statement), 6 (Competency to Stand Trial), 16 (Ineffective Assistance of Counsel at Mitigation), 17 (Ineffective Assistance of Expert), 18 (Denial of Right to Present Mitigation Evidence)), it is plausible that the testing to be administered is likely to reveal evidence in support of Mr. Twyford's claims. Additionally, this investigation could plausibly lead to the development of evidence and materials in support for any challenges to the Warden's claims of procedural default or exhaustion.

*Id.* at 8 (Page ID #7026).

The warden opposed this motion on two grounds.  R. 107 (03/28/19 Warden's Opp. to Mot.) (Page ID #7089–94).  First, the warden contended that the district court has jurisdiction under 28 U.S.C. § 2241 "to bring a prisoner to the place where the Court is convened in order to

---

[2]OSU has experience securely treating prisoners as OSU provides any needed emergency or inpatient care and performs surgeries and advanced imaging for Ohio inmates.  *See* Bureau of Medical Services (BOMS), Ohio Dep't of Rehab. & Corr., https://drc.ohio.gov/correctional-healthcare (last visited on Apr. 26, 2021).

facilitate its adjudication of a 2254 action," but not to require that the state transport a prisoner to an outside medical facility. *Id.* at 1–3 (Page ID #7089–91). Second, the warden argued that Twyford was seeking new information that he did not present to the state courts and therefore *Cullen v. Pinholster*, 563 U.S. 170 (2011), precluded the district court from considering the results of any resultant neurological imaging. *Id.* at 3–5 (Page ID #7091–93).

The district court granted Twyford's motion. R. 109 (03/19/20 Op. & Order) (Page ID #7102–09). The district court found that it had jurisdiction under the All Writs Act to order the warden to transport Twyford for neurological imaging because the results "may aide this Court in the exercise of its congressionally mandated habeas review." *Id.* at 6 (Page ID #7107). It concluded that it was not "in a position at this stage of the proceedings to make a determination as to whether or to what extent it would be precluded by *Cullen v. Pinholster* from considering any evidence in connection with Dr. Scharre's evaluation." *Id.* at 7–8 (Page ID #7108–09).

The warden timely appealed. R. 110 (Not. of Appeal) (Page ID #7110–11). The district court granted the warden's request for a stay pending our resolution of the warden's appeal. R. 114 (05/04/2020 Order) (Page ID #7123–24).

## II. JURSDICTION

Before reaching the merits of the warden's appeal, we must first determine whether we have jurisdiction over the appeal. The warden argues that we should exercise jurisdiction over his interlocutory appeal either through the collateral-order doctrine or as a petition for a writ of mandamus. We conclude that the warden's appeal satisfies the collateral-order doctrine, so we need not address the warden's mandamus argument.

We have jurisdiction to review final decisions of the district courts, 28 U.S.C. § 1291, and a narrow class of interlocutory and collateral orders, 28 U.S.C. § 1292; *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). To fall within the collateral-order doctrine, the decision (1) must be "conclusive"; (2) must "resolve important questions separate from the merits"; and (3) must be "effectively unreviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995). The Supreme

Court has recognized that in cases where it has permitted an interlocutory appeal, "some particular value of a high order was marshaled in support of the interest in avoiding trial." *Will v. Hallock*, 546 U.S. 345, 352 (2006).

The transport order satisfies all three conditions. First, the transport order conclusively determined that the State must transport Twyford to OSU for neurological imaging. Second, whether the district court has the authority to order the transport of Twyford to OSU is unrelated to the merits of Twyford's habeas petition but implicates important issues of state sovereignty and federalism. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 714 (1996) (holding that an order remanding on grounds of *Burford* abstention is an appealable collateral order because it "conclusively determines an issue that is separate from the merits, namely, the question whether the federal court should decline to exercise its jurisdiction in the interest of comity and federalism"). Third, the transport order would be effectively unreviewable if we were to wait until after the district court resolved Twyford's habeas petition. At that stage, the State will have already undertaken the burden, risk, and expense of transporting Twyford to OSU for neurological imaging. Our conclusion that we have appellate jurisdiction over the warden's appeal is consistent with other circuits that have considered transport orders. *Jones v. Lilly*, 37 F.3d 964, 965–66 (3d Cir. 1994); *Jackson v. Vasquez*, 1 F.3d 885, 887–88 (9th Cir. 1993); *Ballard v. Spradley*, 557 F.2d 476, 479 (5th Cir. 1977).

Twyford argues that the district court's transport order does not involve a disputed question. Rather, Twyford characterizes the transport order as "simply authoriz[ing] habeas counsel to conduct their own independent investigation of Mr. Twyford's case," which is "no more 'disputed' than an order appointing counsel under 18 U.S.C. § 3599(a)(2) or appointing an investigator under § 3599(f)." Twyford's Br. at 11. Twyford's portrayal of the district court's transport order, however, glosses over the federalism concerns implicated by the transport order. Twyford also contends that, if we were to take seriously the warden's argument that this is a discovery order in disguise, discovery orders generally are not appealable under the collateral-order doctrine despite their irreversible burden, citing *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 444 F.3d 462, 472 (6th Cir. 2006) (collecting cases). Twyford's Br. at 12–14. Twyford is correct that mere expense and burden to a party do not necessitate immediate review.

In *Will v. Hallock*, the Supreme Court concluded that a district court ruling that would prevent a party from avoiding the expense and burden of trial was not reviewable under the collateral-order doctrine because the burden and expense of trial, absent "some particular value of a high order," did not require immediate appeal. 546 U.S. at 350–53. Here, however, the district court's transport order implicates a "particular value of a high order," namely a federal court's authority to compel state action.

We therefore have appellate jurisdiction to review the district court's transport order under the collateral-order doctrine. The district court had jurisdiction over Twyford's habeas petition under 28 U.S.C. §§ 2241 and 2254.

## III. ANALYSIS

The warden argues that the district court did not have authority under the All Writs Act to issue the transport order because the order is inconsistent with statutes and the common-law understanding of habeas corpus. The warden also claims that the transport order is not "necessary or appropriate" in Twyford's case because Twyford has not shown that results of the neurological imaging would be relevant to or admissible in his habeas proceeding. We conclude that the district court properly exercised its authority under the All Writs Act to issue the transport order in aid of its jurisdiction over Twyford's habeas petition.[3]

The All Writs Act states that courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The Act is not an independent source of jurisdiction. *See United States v. Denedo*, 556 U.S. 904, 911 (2009). Rather, the Act serves to "fill[] the interstices of federal judicial power when those gaps threatened to thwart the otherwise proper exercise of federal courts'

---

[3]In his brief, Twyford appears to argue that the district court had authority to issue the order under 18 U.S.C. § 3599(f), which provides for appointed counsel and investigative services in capital habeas proceedings. Twyford's Br. at 22–27. The district court, however, based the transport order on its jurisdiction over Twyford's habeas petition. Further, § 3599(f) is not an independent source of jurisdiction. The warden argues in his reply brief and at oral argument that Twyford has abandoned the district court's reasoning. Warden's Reply Br. at 14–15. At oral argument, Twyford's counsel clarified that he is arguing that the district court's order is based on § 3599(f) and the district court's habeas jurisdiction. We have rejected the argument that appellees who fail to raise an argument on appeal waive that argument, for we "can affirm the district court on any basis supported by the record." *Leary v. Daeschner*, 228 F.3d 729, 741 n.7 (6th Cir. 2000). We consider the arguments included in the appellate briefs as well as the basis of the district court's order.

jurisdiction." *Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 41 (1985). As the text of § 1651 states, the district court's order must be "agreeable to the usages and principles of law." "In determining what auxiliary writs are 'agreeable to the usages and principles of law,' we look first to the common law." *United States v. Hayman,* 342 U.S. 205, 221 n.35 (1952). The Supreme Court has cautioned that "[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Penn. Bureau of Corr.*, 474 U.S. at 43. The Act "does not authorize [federal courts] to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Id.* Even when no statute seemingly precludes the district court's action, we consider whether the action is "consistent with the intent of Congress." *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977). We review de novo a district court's exercise of authority under the All Writs Act. *See United States v. Perry*, 360 F.3d 519, 533 (6th Cir. 2004).

The warden argues that *Baze v. Parker*, 632 F.3d 338 (6th Cir. 2011), controls our decision in this case. We disagree. *Baze* involved a death-row inmate who sought to compel the state to make state prison officials and other inmates available for interviews so that he could submit their interview statements in support of his state clemency application. *Id.* at 340. We concluded that the All Writs Act and 18 U.S.C. § 3599(f) did not give the district court authority to grant Baze's motion. Section 3599(f) "simply empowers a court to authorize, for purposes of compensation, an attorney to acquire an investigator's efforts"; it does not "enable a court to order any party that stands in the investigator's way to stand down." *Id.* at 343.

*Baze* is distinguishable from Twyford's case. Here, the district court grounds its order in its jurisdiction over Twyford's habeas petition, not in the All Writs Act alone or in § 3599. Moreover, the district court's transport order is also of a different character from the order sought in *Baze*. The defendant in *Baze* sought to compel state prison officials to provide him with information that could be helpful to his state clemency petition, whereas Twyford seeks an order that the State transport him to obtain medical imaging of his own body for use in his federal habeas proceeding.

To the extent that *Baze* applies to this case, it supports the district court's authority to issue the transport order. In a footnote, *Baze* recognized that "federal courts in [federal capital

trials and federal habeas proceedings] may have oversight powers similar to those Baze seeks here," but "those powers are exercised pursuant to other sources of authority, not section 3599." *Id.* at 342 n.3. Twyford's request for an order to compel transport in aid of the district court's pre-existing jurisdiction over his federal habeas petition is precisely the type of order contemplated by the *Baze* footnote.

Although we have not squarely addressed whether a district court may order the transport of a habeas petitioner under the All Writs Act, a few district courts in this circuit have addressed the question and reach differing conclusions. In *Elmore v. Warden, Chillicothe Correctional Institution*, No. 1:07-CV-776, 2019 WL 5704042 (S.D. Ohio Nov. 5, 2019), the district court concluded that it had jurisdiction under the All Writs Act to order a habeas petitioner's transportation for neurological imaging. *Baze* did not preclude the district court from issuing the order to transport because the defendant in *Baze* requested an order to obtain information in support of his state clemency petition, whereas Elmore sought to obtain neurological imaging in support of his habeas petition before the district court. *Id.* at *3. By contrast, in *Trimble v. Bobby*, No. 5:10-CV-00149, 2011 WL 1527323 (N.D. Ohio Apr. 19, 2011), the district court denied the petitioner's request for an order directing the state to transport him for neurological imaging. The district court concluded that *Baze* precludes a district court from ordering the transport of a habeas petitioner for neurological imaging. *Id.* at *1. Even if *Baze* were distinguishable, the district court in *Trimble* found that the petitioner did not establish that the district court would be able to consider the results of the neurological imaging under *Cullen v. Pinholster* because he had requested neurological imaging in his state-court proceeding and the state courts denied this request. *Id.* at *2.

We agree with the district courts' decisions in this case and in *Elmore* that a district court has the authority under the All Writs Act to order the state to transport a habeas petitioner for medical imaging in aid of its habeas jurisdiction. Such transport orders do not conflict with habeas statutes or the common law and are consistent with congressional intent to provide for counsel for capital defendants. In this case, Twyford has shown that such an order is "necessary or appropriate" to aid the district court in its adjudication of his habeas petition.

The warden contends that the district court's order is contrary to the role of the writ of habeas corpus at common law in securing the petitioner's release from unlawful restraint. In support, the warden cites the Supreme Court's decision in *Department of Homeland Security v. Thuraissigiam*, 140 S. Ct. 1959 (2020), which held that the Suspension Clause did not entitle an asylum applicant to additional administrative review of his asylum application. The Supreme Court in *Thuraissigiam* reasoned that the writ of habeas corpus "has traditionally been a means to secure *release* from unlawful detention, but respondent invokes the writ to achieve an entirely different end, namely, to obtain additional administrative review of his asylum claim and ultimately to obtain authorization to stay in this country." *Id.* at 1963. Here, in contrast, the district court's transport order is in connection with a petition for a writ of habeas corpus challenging Twyford's detention, and is therefore, not contrary to the common-law understanding of habeas.

The district court's transport order also does not contravene other statutes. The warden contends that 28 U.S.C. § 2241(c) limits the district court's authority to order the transport of prisoners to bringing prisoners only to court to testify or for trial. The relevant portion of § 2441(c) states that "[t]he writ of habeas corpus shall not extend to a prisoner unless— . . . (5) *[i]t is necessary to bring him into court to testify or for trial*." (emphasis added). Specifically, the warden argues that "[t]he allowance of transport orders in these narrow circumstances is best read to *prohibit* orders mandating the transportation of prisoners in other circumstances." Warden's Br. at 32. The Seventh Circuit, in a § 1983 suit, concluded that § 2241 precluded the district court from ordering the transport of the petitioner for a medical examination for his lawsuit. *Ivey v. Harney*, 47 F.3d 181 (7th Cir. 1995). The Seventh Circuit reads § 2241(c)(5) as a "closed-ended statutory list" that permitted the district court to issue orders to transport an inmate only to court or to testify, not to an outside medical facility for a medical exam. *Id.* at 185.

We disagree with the Seventh Circuit's interpretation of § 2241(c)(5) in *Ivey*, which involved a civil suit under § 1983 rather than a federal habeas action, and instead view § 2241(c)(5) as limiting when the district court may issue the writ of habeas corpus *itself*, not forbidding ancillary orders needed to aid in adjudicating a petitioner's habeas petition. Transport

orders, such as the one issued in Twyford's case, instead fill the gaps left by federal habeas statutes by ensuring that states cannot prevent federal habeas petitioners from presenting their cases to the district court.

Habeas discovery rules do not preclude the district court from issuing the transport order in Twyford's case. The warden contends that the district court's order is inconsistent with the rules for habeas discovery.[4] Warden's Br. at 13–15, 40–42. The warden notes that rules governing discovery in habeas proceedings require petitioners to show "good cause" to obtain the evidence, which is a higher bar than the requirement under the All Writs Act that the district court find the order is "necessary or appropriate." *Id.* at 35. Rules limiting habeas discovery have no bearing on the transport order because Twyford's request for transportation to OSU for neurological imaging is not a request for discovery. Rule 6 of the Rules Governing Section 2254 Cases, which governs discovery in federal habeas proceedings, does not define "discovery," though Black's Law Dictionary defines it as the "[c]ompulsory disclosure, at a party's request, of information that relates to the litigation," *Discovery*, Black's Law Dictionary (11th ed. 2019). The transport order does not fall within Black's definition of discovery, because Twyford is seeking neurological imaging of his own brain, not information from the other party. But for his incarceration, Twyford and his attorneys would not need any state involvement in obtaining his own neurological imaging.

The district court's transport order is also consistent with congressional intent. Section 3599, although not an independent source of jurisdiction, indicates that Congress considered it important that persons sentenced to death have counsel and investigative services in post-conviction proceedings. The district court's transport order ensures that Twyford's statutory right to counsel and investigative services in post-conviction proceedings is meaningful.

Finally, we agree with the district court that Twyford has shown that requiring transport to OSU is "necessary or appropriate" to aid the district court in its adjudication of Twyford's habeas petition. The All Writs Act requires that the writ be "necessary or appropriate in aid of

---

[4]The warden argues, in the alternative, that Twyford's request does not satisfy the requirements for habeas discovery. Warden's Br. at 35–40. We need not address this argument because Twyford has repeatedly disclaimed that he is seeking discovery.

[the courts'] respective jurisdictions." 28 U.S.C. § 1651. Although Twyford argues that the transport order is "reasonably necessary," under the standard for requests for investigative services under § 3599(f), Twyford's Br. at 18–19, we affirm the district court's transport order under the All Writs Act in aid of its habeas jurisdiction, and thus we review Twyford's request for whether it is "necessary or appropriate," as required by the All Writs Act.

As Twyford notes, neurological imaging establishing the extent of Twyford's neurological deficits plausibly relates to his claims of ineffective assistance of counsel regarding the failure of trial counsel to present evidence of his neurological deficits, ineffective assistance of the expert witness for failing to conduct testing to show neurological deficits, ineffective assistance of his post-conviction counsel to conduct testing to show his neurological deficits, lack of his competency to stand trial, and the involuntariness of his statement. Twyford's Br. at 23.

The warden contends that district court's transport order is not appropriate because Twyford has not shown that the district court may consider the results of the neurological testing under *Cullen v. Pinholster*, 563 U.S. 170 (2011), which limits when a district court in habeas proceedings may consider evidence not presented before the state courts, Warden's Reply Br. at 22. The dissent similarly accuses us of "circumvent[ing] the Supreme Court's admonition against the admission of new evidence at the federal habeas review stage." Dissenting Op. at 14. In issuing the transport order, the district court emphasized that "at this stage of the proceedings," it was not in a position "to make a determination as to whether or to what extent it would be precluded by *Cullen v. Pinholster* from considering any evidence in connection with Dr. Scharre's evaluation, including whether that information could be considered for any other purpose such as revisiting procedural default." R. 109 (03/19/20 Op. & Order at 7–8) (Page ID #7108–09). At this stage, on review of Twyford's interlocutory appeal seeking a transport order, we need not consider the admissibility of any resulting evidence. The district court is best situated in the first instance to untangle the knotty *Pinholster* evidentiary issues in Twyford's case.

The dissent also contends that the Supreme Court's decision in *Harris v. Nelson*, 394 U.S. 286 (1969), supplies a test for reviewing Twyford's request for a transport order, and

that, applying the *Harris* test, the transport order is not "necessary or appropriate" to aid the district court's jurisdiction over Twyford's case.  Dissenting Op. at 15.  *Harris*, a decision predating the Antiterrorism and Effective Death Penalty Act of 1996, held that Federal Rule of Civil Procedure 81(a)(2), which governed the application of the rules to habeas corpus, articulated a general presumption against applying the Federal Rules of Civil Procedure to habeas corpus proceedings.  The defendant in *Harris* sought to compel the warden to respond to interrogatories pursuant to Federal Rule of Civil Procedure 33.  *Id.* at 289.  The Court reasoned that Congress did not "intend[] to extend to habeas corpus, as a matter of right, the broad discovery provisions which, even in ordinary civil litigation, were 'one of the most significant innovations' of the new rules."  *Id.* at 295 (quoting *Hickman v. Taylor*, 329 U.S. 495, 500 (1947)).  At the same time, the Court recognized that "a district court may, in an appropriate case, arrange for procedures which will allow development, for purposes of the hearing, of the facts relevant to disposition of a habeas corpus petition."  *Id.* at 298.  "[W]here specific allegations before the court show reason to believe that the petitioner, may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry."  *Id.* at 300.  In that circumstance, the Court reasoned that courts may exercise their authority under the All Writs Act to "fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage."  *Id.* at 299.

*Harris* does not govern the district court's exercise of its authority under the All Writs Act to order the transport of Twyford.  *Harris* concerns a habeas petitioner's request for discovery.  *See Thomas v. United States*, 849 F.3d 669, 680 (6th Cir. 2017) ("Rule 6(a) of the Rules Governing § 2255 Proceedings allows the district court to enable further discovery in a habeas proceeding where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." (citing *Harris*, 394 U.S. at 300)); *Hodges v. Bell*, 170 F. App'x 389, 393–94 (6th Cir. 2006) (citing *Harris* in a decision reversing the district court's order requiring that the prison videotape the movements of the petitioner and staff members interacting with the petitioner); *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991) (citing *Harris* in a decision affirming the district court's denial of the petitioner's request for

production of documents from the Parole Commission). Twyford, by contrast, has repeatedly disclaimed that he is seeking discovery. It is understandable that the warden would cite *Harris* only for the principle that "habeas proceedings do not normally allow for liberal discovery or federal factfinding." Warden's Br. at 41.

Therefore, we affirm the district court's determination that the transport order is "necessary or appropriate" in aid of its jurisdiction to adjudicate Twyford's habeas petition.

## IV. CONCLUSION

For the foregoing reasons, we hold that we have appellate jurisdiction under the collateral-order doctrine to review the warden's interlocutory appeal, and we **AFFIRM** the district court's transport order issued pursuant to its exercise of its habeas jurisdiction and the All Writs Act.

————————————

**DISSENT**

————————————

ALICE M. BATCHELDER, Circuit Judge, dissenting. In my view, *Harris v. Nelson*, 394 U.S. 286, 299-300 (1969), governs the exercise of the All Writs Act here. Because the majority holds otherwise, I must respectfully dissent. And because Twyford has not met the *Harris* standard—and no one contends that he has—I would reverse the judgment of the district court. Finally, and perhaps most importantly, the further ramifications of this decision are worth careful note because its effect, if not its purpose, is to circumvent the Supreme Court's admonition against the admission of new evidence at the federal habeas review stage. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under the All Writs Act, Article III courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Despite this broad language, the Act's authority is not unlimited. As is relevant here, a habeas court may use the Act to aid the petitioner's efforts to develop facts and evidence "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *Harris*, 394 U.S. at 300; *see also Hodges v. Bell*, 170 F. App'x 389, 394 (6th Cir. 2006) (citing *Harris* for this proposition). In *Pinholster*, 563 U.S. at 181, the Court emphasized AEDPA's strict limitations on the admission of new evidence—i.e., evidence that was not before the state courts—at the federal habeas stage. Neither the Supreme Court nor this court has reconciled *Harris*'s right to factual development (which pre-dates AEDPA) with *Pinholster*'s prohibition.

Because of the apparent *Harris-Pinholster* friction, the district court was, at a minimum, obliged to comply with *Harris* before invoking its authority under All Writs Act to resolve Twyford's claim. That is, the court should have first determined whether the evidence Twyford was seeking (i.e., brain-scan results) would—supposing the results were as Twyford hoped or predicted—support his specific claims, so as to show that he was entitled to habeas relief. The

district court did not make—indeed, expressly avoided making—this determination, claiming that it could not make the determination until it had the actual test results for consideration.

For his part, Twyford neither argued nor proved that the brain-scan results would meet the *Harris* standard. Instead, Twyford cloaked his case in a broad argument that counsel, appointed under 18 U.S.C. § 3599, has a right to investigate his client's habeas claims. We have rejected such a broad reading of § 3599. *Baze v. Parker*, 632 F.3d 338, 345 (6th Cir. 2011) ("Accordingly, we hold that . . . 3599(f) provides a federal court with no jurisdiction to issue any order beyond the authorization of funds."). As the majority explains in more detail, Twyford's claim sounds in the All Writs Act, not § 3599. But the majority does not apply *Harris*'s limitation.

Pursuant to *Harris*, the All Writs Act empowers the district court to issue orders that enable a habeas petitioner's collection of evidence when: (1) the petitioner has identified specific claims for relief that the evidence being sought would support or further; and (2) the district court has determined that if that evidence is as the petitioner proposed or anticipated, then it could entitle the petitioner to habeas relief. To be sure, this might be easy to the point of formulaic. On the other hand, it might not survive its first confrontation with *Pinholster*'s inadmissibility standard.

In the present case, if the court properly applied *Harris*, then Twyford would first have to point to which of his habeas claims the brain scan would support and explain how the anticipated results of that scan would further those claims. Then, the court would have to determine whether that evidence would entitle Twyford to habeas relief, and whether that evidence could overcome *Pinholster*. If the district court considered Twyford's specific claims and explanations, found that *Pinholster* would not bar admission, and determined that the requested evidence (if as anticipated) could reasonably entitle Twyford to habeas relief, then it could invoke the All Writs Act to order the federal government to transport Twyford to OSU for testing.

But instead, the district court has enabled Twyford to proceed in reverse order by collecting evidence before justifying it. Because that contradicts *Harris* and, as was mentioned

at the outset, appears by either design or effect to circumvent *Pinhoslter*, I must respectfully dissent.