(Slip Opinion) OCTOBER TERM, 2021 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SHOOP, WARDEN *v.* TWYFORD

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 21–511. Argued April 26, 2022—Decided June 21, 2022

Respondent Raymond Twyford was convicted by an Ohio jury of aggravated murder and other charges and was sentenced to death. The Ohio appellate courts affirmed his conviction and sentence. Twyford then sought state postconviction relief, claiming that his trial counsel was ineffective for failing to present evidence of a head injury Twyford sustained as a teenager. The Ohio courts rejected his claim, concluding that trial counsel had simply presented a competing psychological theory for Twyford's actions. Twyford then filed a petition for federal habeas relief. The District Court dismissed most of Twyford's claims as procedurally defaulted but allowed a few to proceed. He then moved for an order compelling the State to transport him to a medical facility, arguing that neurological testing would plausibly lead to the development of evidence to support his claim that he suffers neurological defects. The District Court granted Twyford's motion under the All Writs Act, which authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U. S. C. §1651(a). The Court of Appeals affirmed. Both courts concluded that it was unnecessary to consider the admissibility of any resulting evidence prior to ordering the State to transport Twyford to gather it.

*Held*: A transportation order that allows a prisoner to search for new evidence is not "necessary or appropriate in aid of" a federal court's adjudication of a habeas corpus action when the prisoner has not shown that the desired evidence would be admissible in connection with a particular claim for relief. Pp. 4–11.

 (a) The State argues that the All Writs Act does not authorize the issuance of transportation orders for medical testing at all. The State also argues that the order issued in this case was not "necessary or

appropriate in aid of" the District Court's jurisdiction because Twyford failed to show that the evidence he hoped to find would be useful to his habeas case. Because this Court agrees with the State's second argument, it does not address the first.

In habeas cases such as this, the Antiterrorism and Effective Death Penalty Act (AEDPA) restricts a federal court's authority to grant relief. AEDPA provides that a federal habeas court cannot grant relief in a case adjudicated on the merits in state court unless the state court (1) contradicted or unreasonably applied this Court's precedents, or (2) handed down a decision "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." §§2254(d)(1)–(2). AEDPA also restricts the ability of a federal habeas court to develop and consider new evidence, limiting review of factual determinations under §2254(d)(2) to "the evidence presented in the State court proceeding," and review of legal claims under §2254(d)(1) "to the record that was before the state court." *Cullen* v. *Pinholster*, 563 U. S. 170, 181. A federal court may admit new evidence only in two limited situations: Either the claim must rely on a "new" and "previously unavailable" "rule of constitutional law" made retroactively applicable by this Court, or it must rely on "a factual predicate that could not have been previously discovered through the exercise of due diligence." §2254(e)(2)(A). But before a federal court may decide whether to grant an evidentiary hearing or "otherwise consider new evidence" under §2254(e)(2), it must first determine that such evidence could be legally considered in the prisoner's case. *Shinn* v. *Martinez Ramirez*, 596 U. S. ___, ___. That is because a federal court "may *never* needlessly prolong a habeas case, particularly given the essential need to promote the finality of state convictions." *Id.,* at ___ (internal quotation marks omitted).

Twyford's transportation request was granted under the All Writs Act. This Court has held that the All Writs Act cannot be used to circumvent statutory requirements or otherwise binding procedural rules. See *Pennsylvania Bureau of Correction* v. *United States Marshals Service,* 474 U. S. 34, 43. In federal habeas proceedings, AEDPA provides the governing rules. And this Court's precedents explain that a district court must consider AEDPA's requirements before facilitating the development of new evidence. By the same token, if an order issued under the All Writs Act enables a prisoner to fish for unusable evidence, such a writ would not be "necessary or appropriate in aid of" the federal court's jurisdiction, as all orders issued under the Act must be. §1651(a). "[G]uided by the general principles underlying [this Court's] habeas corpus jurisprudence," *Calderon* v. *Thompson,* 523 U. S. 538, 554, a writ that enables a prisoner to gather evidence that would not be admissible would "needlessly prolong" resolution of the

Syllabus

federal habeas case, *Shinn*, 596 U. S., at \_\_\_, and frustrate the "State's interest[ ] in finality," *Calderon*, 523 U. S., at 556. A federal court order requiring a State to transport a prisoner to a public setting not only delays resolution of his habeas case, but may also present serious risks to public safety. Commanding a State to take such risks so that a prisoner can search for unusable evidence would not be a "necessary or appropriate" means of aiding a federal court's limited habeas review. Pp. 4–9.

(b) The District Court and Court of Appeals in this case concluded that directing the State to transport Twyford to a medical facility would aid the adjudication of his habeas petition, but they never determined how this could aid his cause. For the reasons discussed, that was error. Applying the proper standard here is straightforward. Twyford never explained how the results of the neurological testing could be *admissible* in his habeas proceedings, and it is hard to see how they could be, since the District Court's AEDPA review is limited to "the record that was before the state court," *Pinholster*, 563 U. S., at 181, and Twyford made no attempt to explain how that bar would be inapplicable in his case. Twyford suggested that the results of his brain testing could "plausibly" bear on the question whether to excuse procedural default, but he did not identify the particular defaulted claims nor explain how the testing would allow him to resurrect those claims. Pp. 9–11.

11 F. 4th 518, reversed and remanded.

ROBERTS, C. J., delivered the opinion of the Court, in which THOMAS, ALITO, KAVANAUGH, and BARRETT, JJ., joined. BREYER, J., filed a dissenting opinion, in which SOTOMAYOR and KAGAN, JJ., joined. GORSUCH, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 21–511

## TIM SHOOP, WARDEN, PETITIONER *v.* RAYMOND A. TWYFORD, III

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[June 21, 2022]

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U. S. C. §1651(a). In this case, the District Court ordered the State to transport a prisoner in its custody to a hospital for medical testing. The prisoner argued that the testing could reveal evidence helpful in his effort to obtain habeas corpus relief. The question is whether the District Court's order is "necessary or appropriate in aid of" the federal court's resolution of the prisoner's habeas case. We hold that it is not, and therefore reverse.

I

On the evening of September 23, 1992, Raymond Twyford and his co-conspirator lured Richard Franks to a remote location, and shot and killed him. To hide their crime, the pair mutilated Franks's body and pushed it into a pond. But a sheriff found the body a few days later, and his investigation led to Twyford. Twyford confessed, claiming that Franks had raped his girlfriend's daughter and that he had

killed Franks out of revenge. A jury convicted Twyford of aggravated murder, kidnapping, robbery, and other charges, and he was sentenced to death. The Ohio appellate courts affirmed his conviction and sentence, *State* v. *Twyford*, 94 Ohio St. 3d 340, 763 N. E. 2d 122, and this Court denied certiorari, 537 U. S. 917 (2002).

Twyford then sought postconviction relief in Ohio state court. Relevant here, he claimed that his trial counsel was ineffective for failing to present evidence of a head injury Twyford sustained as a teenager during a suicide attempt. That injury, Twyford argued, left him "unable to make rational and voluntary choices." *State* v. *Twyford*, 2001 WL 301411, \*10 (Ohio App. 7th, Mar. 19, 2001). The Ohio trial court and Court of Appeals rejected this claim on the merits, concluding that "a finding of ineffective assistance cannot be based upon the trial counsel's choice of one competing psychological explanation over another." *Id.,* at \*13. The Court of Appeals noted that Twyford's counsel had called a psychologist who testified in support of a completely different theory: that Twyford's "commission of the murder was his way of protecting the alleged rape victim from the same type of abusive behavior [he] had experienced when he was young." *Ibid.* Unlike the head injury theory, this one explained Twyford's seemingly deliberate and rational actions: planning a fake hunting trip as a ruse to lure Franks to a remote location, dismembering his body, and disposing of it in such a way as would conceal his identity. This theory was also consistent with Twyford's own written confession, which described his plan in detail. The Ohio Supreme Court denied review. *State* v. *Twyford*, 95 Ohio St. 3d 1436, 2002-Ohio-2084, 766 N. E. 2d 1002 (Table).

In 2003, Twyford filed a petition in federal court for habeas relief, from which this case stems. Despite the passing of two decades, relatively little has happened. The State moved in 2008 to dismiss many of Twyford's claims on the

ground that he failed to raise them in state court. The District Court did not rule on that motion for nine years. Eventually, it dismissed most of Twyford's claims as procedurally defaulted but allowed a few, including some ineffective assistance of counsel claims, to proceed. *Twyford* v. *Bradshaw*, No. 2:03–cv–906 (SD Ohio, Sept. 27, 2017).

Twyford then moved for an order compelling the State "to transport [him] to The Ohio State University Medical Center for medical testing necessary for the investigation, presentation, and development of claims." Motion to Transport for Medical Testing in No. 2:03–cv–906 (SD Ohio), p. 1 (Motion to Transport). Twyford explained that such testing could not be conducted at the prison, and argued that it was necessary to determine whether he suffers neurological defects due to childhood physical abuse, alcohol and drug use, and the self-inflicted gunshot wound to his head. *Id.,* at 3. In support of his motion, he attached a letter from a neurologist stating that "a CT/FDG-PET scan would be a useful next step to further evaluate [him] for brain injury," in part because previous scans revealed 20 to 30 metal fragments in his skull. App. to Pet. for Cert. 272a. Twyford argued that it was "plausible" that the testing was "likely to reveal evidence in support of" claims and that it "could plausibly lead to the development of evidence and materials" that could counter arguments of "procedural default or exhaustion." Motion to Transport 8. He also urged the court to disregard, at least for now, the question whether the results of the brain testing would be admissible.

The District Court granted Twyford's motion and ordered the State to transport him to the Medical Center. It determined that the order was appropriate under the All Writs Act, which authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U. S. C. §1651(a). The District Court did not address

whether it would be able to consider the evidence that Twyford hoped to develop.

The District Court stayed the transportation order pending appeal, and the Court of Appeals affirmed, 11 F. 4th 518 (CA6 2021). That court first concluded that transportation orders to gather evidence are "agreeable to the usages and principles of law." §1651(a). It then determined that Twyford's transportation to gather evidence was "necessary or appropriate" under the Act because the desired evidence "plausibly relate[d]" to his claims for relief. 11 F. 4th, at 526–527. Like the District Court, the Court of Appeals concluded that it was not required to "consider the admissibility of any resulting evidence" before ordering the State to transport Twyford to gather it. *Id.,* at 527.

Judge Batchelder dissented, contending that such an order is "necessary or appropriate in aid of" a court's jurisdiction only if "(1) the petitioner has identified specific claims for relief that the evidence being sought would support or further; and (2) the district court has determined that if that evidence is as the petitioner proposed or anticipated, then it could entitle the petitioner to habeas relief." *Id.,* at 529. The majority's approach, she argued, allowed Twyford to "proceed in reverse order by collecting evidence before justifying it." *Ibid.*

We granted certiorari. 595 U. S. ___ (2022).

## II

The State argues that the lower courts erred for two independent reasons. First, the State contends that the All Writs Act does not authorize the issuance of transportation orders for medical testing at all. Second, the State argues that the transportation order was not "necessary or appropriate in aid of" the District Court's jurisdiction because Twyford failed to show that the evidence he hoped to find would be useful to his habeas case. We agree with the State's second argument and thus need not address the

first.[1]

## A

A federal court's power to grant habeas relief is restricted under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which provides that the writ may issue "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U. S. C. §2254(a). To understand the propriety of the transportation order the District Court entered while adjudicating Twyford's habeas corpus action, it is necessary to review the limits AEDPA imposes on federal courts.

Congress enacted AEDPA "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases," *Woodford* v. *Garceau*, 538 U. S. 202, 206 (2003), and to advance "the principles of comity, finality,

---

[1] The Court of Appeals concluded that it had jurisdiction to review the District Court's order, and we agree. See *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541, 546 (1949). Transportation orders issued under the All Writs Act (1) conclusively require transportation; (2) resolve an important question of state sovereignty conceptually distinct from the merits of the prisoner's claims, see *Puerto Rico Aqueduct and Sewer Authority* v. *Metcalf & Eddy, Inc.*, 506 U. S. 139, 144–145 (1993); and (3) are entirely unreviewable by the time the case has gone to final judgment. The dissent treats the order at issue as a mere discovery order, see *post,* at 3–7 (opinion of BREYER, J.), but that glosses over what it entails: requiring a State to take a convicted felon outside the prison's walls. Such an order creates public safety risks and burdens on the State that cannot be remedied after final judgment, and we have in fact reviewed an identical order before. See *Pennsylvania Bureau of Correction* v. *United States Marshals Service*, 474 U. S. 34 (1985); see also Brief for Petitioners 10, n. 6, and Brief for Federal Respondents 17, n. 8, in *Pennsylvania Bureau of Correction*, O. T. 1984, No. 84–489 (noting the *Cohen* jurisdictional issue). Every Court of Appeals to consider the question, moreover, has held that such orders are immediately appealable. See 11 F. 4th 515, 522 (CA6 2021); *Jones* v. *Lilly*, 37 F. 3d 964, 965–966 (CA3 1994); *Jackson* v. *Vasquez*, 1 F. 3d 885, 887–888 (CA9 1993); *Ballard* v. *Spradley*, 557 F. 2d 476, 479 (CA5 1977); see also *Barnes* v. *Black*, 544 F. 3d 807, 810–811 (CA7 2008).

and federalism," *Williams* v. *Taylor*, 529 U. S. 420, 436 (2000) (*Michael Williams*). It furthered those goals "in large measure [by] revising the standards used for evaluating the merits of a habeas application." *Garceau*, 538 U. S., at 206. Pertinent here, §2254(d) provides that if a claim was adjudicated on the merits in state court, a federal court cannot grant relief unless the state court (1) contradicted or unreasonably applied this Court's precedents, or (2) handed down a decision "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The question under AEDPA is thus not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable—"a substantially higher threshold" for a prisoner to meet. *Schriro* v. *Landrigan*, 550 U. S. 465, 473 (2007); see also *Harrington* v. *Richter*, 562 U. S. 86, 102–103 (2011).

AEDPA also restricts the ability of a federal habeas court to develop and consider new evidence. Review of factual determinations under §2254(d)(2) is expressly limited to "the evidence presented in the State court proceeding." And in *Cullen* v. *Pinholster*, 563 U. S. 170 (2011), we explained that review of legal claims under §2254(d)(1) is also "limited to the record that was before the state court." *Id.,* at 181. This ensures that the "state trial on the merits" is the "main event, so to speak, rather than a tryout on the road for what will later be the determinative federal habeas hearing." *Wainwright* v. *Sykes*, 433 U. S. 72, 90 (1977) (internal quotation marks omitted).

If a prisoner "failed to develop the factual basis of a claim in State court proceedings," a federal court may admit new evidence, but only in two quite limited situations. §2254(e)(2). Either the claim must rely on a "new" and "previously unavailable" "rule of constitutional law" made retroactively applicable by this Court, or it must rely on "a factual predicate that could not have been previously

discovered through the exercise of due diligence." §2254(e)(2)(A). And even if a prisoner can satisfy one of those two exceptions, he must also show that the desired evidence would demonstrate, "by clear and convincing evidence," that "no reasonable factfinder" would have convicted him of the charged crime. §2254(e)(2)(B). Thus, although state prisoners may occasionally submit new evidence in federal court, "AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Pinholster*, 563 U. S., at 186; see also *Michael Williams*, 529 U. S., at 437 ("Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.").

We have explained that a federal court, in deciding whether to grant an evidentiary hearing or "otherwise consider new evidence" under §2254(e)(2), must first take into account these restrictions. *Shinn* v. *Martinez Ramirez*, 596 U. S. \_\_\_, \_\_\_ (2022) (slip op., at 21); see also *Schriro*, 550 U. S., at 474. The reasons for this are familiar. A federal court "may *never* needlessly prolong a habeas case, particularly given the essential need to promote the finality of state convictions," so a court must, before facilitating the development of new evidence, determine that it could be legally considered in the prisoner's case. *Shinn*, 596 U. S., at \_\_\_ (slip op., at 21) (internal quotation marks and citation omitted); see also *Bracy* v. *Gramley*, 520 U. S. 899, 904 (1997) ("A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."). If §2254(e)(2) applies and the prisoner cannot satisfy its "stringent requirements," *Michael Williams*, 529 U. S., at 433, holding an evidentiary hearing or otherwise expanding the state-court record would "prolong federal habeas proceedings with no purpose," *Shinn*, 596 U. S., at \_\_\_ (slip op., at 21) (internal quotation marks omitted). And that would in turn disturb the "State's significant interest in repose for concluded litigation." *Harrington*, 562

U. S., at 103. A court therefore must, consistent with
AEDPA, determine at the outset whether the new evidence
sought could be lawfully considered.

This is true even when the All Writs Act is the asserted
vehicle for gathering new evidence. We have made clear
that a petitioner cannot use that Act to circumvent statu-
tory requirements or otherwise binding procedural rules.
See *Pennsylvania Bureau of Correction* v. *United States
Marshals Service*, 474 U. S. 34, 43 (1985) ("Although [the
Act] empowers federal courts to fashion extraordinary rem-
edies when the need arises, it does not authorize them to
issue ad hoc writs whenever compliance with statutory pro-
cedures appears inconvenient or less appropriate."); *Syn-
genta Crop Protection, Inc.* v. *Henson*, 537 U. S. 28, 32–33
(2002) (same). AEDPA provides the governing rules for fed-
eral habeas proceedings, and our precedents explain that a
district court must consider that statute's requirements be-
fore facilitating the development of new evidence. See
*Schriro*, 550 U. S., at 474; see also *Shinn*, 596 U. S., at ___
(slip op., at 21).

By the same token, a writ seeking new evidence would
not be "necessary or appropriate in aid of" a federal habeas
court's jurisdiction, as all orders issued under the All Writs
Act must be, if it enables a prisoner to fish for unusable ev-
idence, in the hope that it might undermine his conviction
in some way. In every habeas case, "the court must be
guided by the general principles underlying our habeas cor-
pus jurisprudence." *Calderon* v. *Thompson*, 523 U. S. 538,
554 (1998). A writ that enables a prisoner to gather evi-
dence that would not be admissible would "needlessly pro-
long" resolution of the federal habeas case, *Shinn*, 596
U. S., at ___ (slip op., at 21), and frustrate the "State's in-
terest[] in finality," *Calderon*, 523 U. S., at 556. Cf. *Harris*
v. *Nelson*, 394 U. S. 286, 300 (1969) (recognizing, before
AEDPA, that a writ is "necessary or appropriate in aid of"
a federal habeas court's jurisdiction if "specific allegations"

show that the petitioner may, "if the facts are fully developed," be able to demonstrate that he is "entitled to relief").

A federal court order requiring a State to transport a prisoner to a public setting—here, a medical center for testing—not only delays resolution of his habeas case, but may also present serious risks to public safety. See Brief for State of Utah et al. as *Amici Curiae* 7–18 (describing the dangers inherent in prisoner transport); cf. *Price* v. *Johnston*, 334 U. S. 266, 285 (1948) (a court should not require that a prisoner be transported if doing so would cause "undue inconvenience or danger").[2]　Commanding a State to take these risks so that a prisoner can search for unusable evidence would not be a "necessary or appropriate" means of aiding a federal court's limited habeas review.

### B

The District Court entered an order directing the State to transport Twyford to a medical facility, concluding that doing so would aid its adjudication of his habeas petition. But the court never determined how, in light of the limitations on its review described above, newly developed evidence could aid Twyford's cause. See *Twyford* v. *Warden*, 2020 WL 1308318, \*4 (SD Ohio, Mar. 19, 2020) ("the Court does not find itself in a position at this stage of proceedings to make a determination as to whether or to what extent it would be precluded by *Cullen* v. *Pinholster* from considering any new evidence"). Nor did the Sixth Circuit. See 11 F. 4th, at 527 ("At this stage, on review of Twyford's interlocutory appeal seeking a transport order, we need not consider the admissibility of any resulting evidence."). For the

_____

[2] These risks are not speculative. To give just one example, earlier this year a convicted murderer escaped from a prison bus transporting him to a medical appointment by breaking out of his restraints and stabbing the bus driver. He was on the run for three weeks—and allegedly killed a family of five during that time—before dying in a shootout with the police. See M. Ives & A. Traub, Hunt for Escaped Murderer Ends in Shootout With Police in Texas, N. Y. Times, June 4, 2022, p. A14.

reasons just discussed, that was error.

Reviewing Twyford's request for transportation under the proper standard is straightforward, because his motion sheds no light on how he might persuade a court to consider the results of his testing, given the limitations AEDPA imposes on presenting new evidence. He argued that it is "plausible that the testing to be administered is likely to reveal evidence in support of" his claims of ineffective assistance of counsel and expert witness, lack of competency to stand trial, and the involuntariness of his confession. Motion to Transport 8. Whether or not that is true, Twyford never explained how the results of the neurological testing could be *admissible* in his habeas proceeding, and it is hard to see how they could be. The Ohio courts already adjudicated and rejected most of these claims on the merits, and the District Court's AEDPA review will therefore be limited to "the record that was before the state court." *Pinholster*, 563 U. S., at 181. As for the claims that the state courts did not consider, Twyford never argued that he could clear the bar in §2254(e)(2) for expanding the state court record, or that the bar was somehow inapplicable.

Twyford asserted in passing that the desired evidence could "plausibly" bear on the question whether to excuse procedural default. Motion to Transport 8. By way of background, a federal court may not review a claim a habeas petitioner failed to adequately present to state courts, unless he shows "cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation." *Davila* v. *Davis*, 582 U. S. ___, ___ (2017) (slip op., at 5) (internal quotation marks omitted). Twyford suggested that the results of his brain testing could help make that showing. But he did not identify the particular defaulted claims he hopes to resurrect, nor did he explain how the testing would matter to his ability to do so. And in any event, this Court has already held that, if §2254(e)(2) applies and the prisoner cannot

meet the statute's standards for admitting new merits evidence, it serves no purpose to develop such evidence just to assess cause and prejudice. See *Shinn*, 596 U. S., at \_\_\_ (slip op., at 20) ("when a federal habeas court . . . admits or reviews new evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in §2254(e)(2) are satisfied"). The District Court thus erred in ordering Twyford's transfer to gather evidence he had never demonstrated would be admissible.

*          *          *

A transportation order that allows a prisoner to search for new evidence is not "necessary or appropriate in aid of" a federal court's adjudication of a habeas corpus action, 28 U. S. C. §1651(a), when the prisoner has not shown that the desired evidence would be admissible in connection with a particular claim for relief. Because the District Court entered such an order despite Twyford's failure to make the required showing, the judgment of the Court of Appeals affirming that order is reversed and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

### No. 21–511

_____

## TIM SHOOP, WARDEN, PETITIONER *v.* RAYMOND A. TWYFORD, III

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[June 21, 2022]

JUSTICE BREYER, with whom JUSTICE SOTOMAYOR and
JUSTICE KAGAN join, dissenting.

The Court today reviews a District Court's pretrial order
requiring Ohio "to transport a prisoner in its custody to a
hospital for medical testing" in order to develop evidence to
support the prisoner's habeas petition. *Ante,* at 1. The
Court holds that the District Court's order did not comply
with the All Writs Act because the District Court failed to
consider whether the evidence sought could be admissible
in the habeas proceeding. See *ante,* at 9–10. I would not
reach the merits of that question because I do not believe
that the Court of Appeals had jurisdiction to hear the
State's interlocutory appeal. I respectfully dissent.

## I

Courts of Appeals generally have jurisdiction to review
"final decisions of the district courts." 28 U. S. C. §1291.
They do not ordinarily hear interlocutory appeals. Limiting
appellate jurisdiction over interlocutory matters avoids
piecemeal decisionmaking and "combine[s] in one review all
stages of the proceeding that effectively may be reviewed
and corrected if and when final judgment results." *Cohen*
v. *Beneficial Industrial Loan Corp.,* 337 U. S. 541, 546
(1949). Too many interlocutory appeals could slow down

the workings of the judicial system. That can lead to a number of harms, including, *e.g.,* "mak[ing] it more difficult for trial judges to do their basic job—supervising trial proceedings"; "threaten[ing] those proceedings with delay, adding costs and diminishing coherence"; and "risk[ing] additional, and unnecessary, appellate court work." *Johnson* v. *Jones*, 515 U. S. 304, 309 (1995).

At the same time, interlocutory appeals can sometimes have "important countervailing benefits." *Ibid.* Balancing the harms and benefits can be a difficult task, and Congress has prescribed a means for accomplishing that task by way of rulemaking. It has authorized this Court to promulgate rules "defin[ing] when a ruling of a district court is final for the purposes of appeal under section 1291," §2072(c), and "provid[ing] for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for" by statute, §1292(e). The State does not claim that any rule promulgated pursuant to this authority permits interlocutory appeal of the transportation order here. Instead, the State asks us to create such a rule by court decision, outside of the congressionally prescribed rulemaking process.

It is true that, in the past, we have occasionally done so under what we have called the "collateral order doctrine." That doctrine allows interlocutory appeal from a "small class" of orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action." *Cohen*, 337 U. S., at 546. But we have repeatedly stated that this doctrine is a "'narrow' exception [that] should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Digital Equipment Corp.* v. *Desktop Direct, Inc.*, 511 U. S. 863, 868 (1994) (citation omitted); see also *Will* v. *Hallock*, 546 U. S. 345, 350 (2006) ("[A]lthough the Court has been asked many times to expand the 'small class' of collaterally appealable orders,

we have instead kept it narrow and selective in its membership"); *Mohawk Industries, Inc.* v. *Carpenter*, 558 U. S. 100, 113 (2009) ("[R]ulemaking, 'not expansion by court decision,' [is] the preferred means for determining whether and when prejudgment orders should be immediately appealable").

We must therefore exercise caution before extending the collateral order doctrine. We have "stringent[ly]" limited that doctrine to only those district court orders "[1] that are conclusive, [2] that resolve important questions completely separate from the merits, and [3] that would render such important questions effectively unreviewable on appeal from final judgment in the underlying action." *Digital Equipment Corp.*, 511 U. S., at 867–868.

## II

### A

The Court today extends the collateral order doctrine to a new category of orders, which it describes as "[t]ransportation orders issued under the All Writs Act." *Ante,* at 5, n. 1. The Court believes these kinds of orders are collateral and therefore immediately appealable because, it says, they "(1) conclusively require transportation; (2) resolve an important question of state sovereignty conceptually distinct from the merits of the prisoner's claims; and (3) are entirely unreviewable by the time the case has gone to final judgment." *Ibid.* (citation omitted). I agree that orders like the one at issue here "conclusively require transportation" and are largely "unreviewable by the time the case has gone to final judgment." *Ibid.* But I do not agree that such orders "resolve an important question of state sovereignty conceptually distinct from the merits of the prisoner's claims." *Ibid.* That is so for three reasons.

First, transportation orders do not appear to me to be especially "important." Even if those orders are unreviewable

after final judgment, we have said that "the mere identification of some interest that would be 'irretrievably lost' has never sufficed," on its own, to justify interlocutory appeal. *Digital Equipment Corp.*, 511 U. S., at 872. Rather, the order must implicate "'a substantial public interest' or 'some particular value of a high order.'" *Mohawk Industries, Inc.*, 558 U. S., at 107. It is difficult to see how transportation orders of the kind at issue here meet that requirement. The order is analogous to a discovery order because it requires the State to transport a prisoner for medical testing in order to develop evidence relating to the prisoner's habeas claims. See *ante,* at 1, 7–8 (comparing requirements for a transportation order to requirements for discovery and for an evidentiary hearing). I see no reason why such an order ordinarily should be of greater importance than a discovery order of some other kind.

We have held that discovery orders are not immediately appealable, even where discovery would require revealing privileged information that, once shared, could not be unshared if the disclosing party prevailed on appeal after final judgment. *Mohawk Industries, Inc.*, 558 U. S., at 108–109. Why should discovery-like transportation orders be immediately appealable when ordinary discovery orders are not? Neither touches upon substantial public interests. And, in both instances, the harms of interlocutory appeal are significant while the countervailing benefits are minimal.

Take first the harms. As I said above, interlocutory appeals "unduly delay the resolution of district court litigation and needlessly burden the courts of appeals." See *id.*, at 112. In this case, for example, the appeal of the District Court's transportation order has lasted over two years. See App. to Pet. for Cert. 33a (order entered March 19, 2020). If interlocutory appeals were permitted as of right in all similar cases requiring transportation of a prisoner, the resulting delays would impair the ability of district courts to manage their own dockets and supervise trial proceedings.

By comparison, the benefits of interlocutory appeal here are small. District courts, not appellate courts, have "comparative expertise" in deciding when evidentiary development is appropriate and when transportation orders are necessary to facilitate that development. See *Johnson*, 515 U. S., at 317. As a result, interlocutory appeal is unlikely "to bring important error-correcting benefits" in most cases. *Id.*, at 316. In the rare case where an erroneous transportation order happens to implicate unusually important interests, a State has other avenues for addressing that error. It can ask district courts to certify a discretionary interlocutory appeal under §1292(b); seek a writ of mandamus; or defy the order and incur a court-imposed sanction, which may then itself be appealed immediately in some cases. See *Mohawk Industries Inc.*, 558 U. S., at 110–112. Those avenues—sufficient to protect against errors in discovery, see *ibid.*—should generally be sufficient for transportation-related errors as well.

Second, the Court overstates transportation orders' impact on "state sovereignty." See *ante,* at 5, n. 1. The Court of Appeals noted respondent's argument that "discovery orders generally are not appealable under the collateral-order doctrine," but it distinguished the transportation order at issue here on the ground that it "implicates . . . a federal court's authority to compel state action." 11 F. 4th 518, 523 (CA6 2021). But the mere fact that the appealing party is a State is not, on its own, enough to justify interlocutory appeal. We have never suggested, for example, that a discovery order against a State is immediately appealable simply because it imposes costs on a sovereign State. To allow interlocutory appeal on such grounds would create an anomaly: The State would be able to immediately appeal a discovery order entered against it, but an opposing party would not.

The Court suggests that the transportation order here is not a mere discovery order because it "requir[es] a State to

take a convicted felon outside the prison's walls." *Ante,* at
5, n. 1. The Court says doing so "creates public safety risks
and burdens on the State that cannot be remedied after fi-
nal judgment." *Ibid.* But what exactly are those risks? The
order here requires transporting respondent to a medical
center—the Ohio State University Wexner Medical Center.
11 F. 4th, at 520. That medical center is the "official prison
hospital," which "has the security and other infrastructure"
to safely accommodate prisoners and does so regularly.
App. to Pet. for Cert. 24a; Tr. of Oral Arg. 40, 57–58. Re-
spondent tells us that he has personally been transported
between the prison and the medical center 16 times without
incident. *Id.,* at 57.

Other orders might well create similar kinds of risks. A
writ of habeas corpus might require the State to transport
a prisoner to court to testify or for trial, see §2241(c)(5), or
an order appointing a psychiatrist or other expert to con-
duct a psychological examination might require the State to
allow access to a dangerous prisoner, see Fed. Rule Civ.
Proc. 35(a). Would the Court's logic require that all such
orders with security risks be immediately appealable? That
would be a dramatic extension of the collateral order doc-
trine, which we have said should remain "'*narrow*,'" *Digital
Equipment Corp.*, 511 U. S., at 868 (emphasis added).

Finally, we have also said that some interlocutory ap-
peals "mak[e] unwise use of appellate courts' time, by forc-
ing them to decide in the context of a less developed record,
an issue very similar to one they may well decide anyway
later, on a record that will permit a better decision." *John-
son*, 515 U. S., at 317. That warning is applicable here. The
question whether the transportation order was proper un-
der the All Writs Act is not conceptually distinct from the
merits of respondent's habeas claims. In order to obtain a
transportation order, the Court says, a prisoner must show
that "the desired evidence would be admissible in connec-
tion with a particular claim for relief." *Ante,* at 11. Of

course, at this early stage, a district court's assessment of that issue is only preliminary because it cannot know for certain what evidence will be revealed. After the evidence is developed, the court will need to make a final determination of whether it is in fact admissible. Requiring appellate courts to review both the district court's preliminary assessment of admissibility on interlocutory appeal *and* its ultimate assessment of the same question after final judgment is unnecessarily duplicative and inefficient.

All of these concerns suggest that transportation orders like the one here do not satisfy the requirements for interlocutory appeal under the collateral order doctrine.

## B

The Court points out in response that "[e]very Court of Appeals to consider the question" has found a transportation order to be immediately appealable. *Ante,* at 5, n. 1. True. But few Courts of Appeals have been asked to "consider the question." The Court cites, over the last five decades, only four cases (besides this one) that have concluded that transportation orders are immediately appealable. *Ibid.* (citing *Jones* v. *Lilly*, 37 F. 3d 964, 965–966 (CA3 1994); *Jackson* v. *Vasquez*, 1 F. 3d 885, 887–888 (CA9 1993); *Ballard* v. *Spradley*, 557 F. 2d 476, 479 (CA5 1977); *Barnes* v. *Black*, 544 F. 3d 807, 810–811 (CA7 2008)). An average of one decision every decade can hardly be thought to establish a lower court consensus. A contrary determination here would not disturb settled practice.

The Court also asserts that, on one occasion, we have previously reviewed a transportation order. See *Pennsylvania Bureau of Correction* v. *United States Marshals Service*, 474 U. S. 34 (1985). But the precedential value of that decision is limited because the opinion did not discuss the Court of Appeals' jurisdiction to hear an interlocutory appeal from the order. See *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 511 (2006). It does not set forth a jurisdictional ruling at all.

\*   \*   \*

For these reasons, I would not reach the merits of the questions presented by petitioner.  I respectfully dissent.

# SUPREME COURT OF THE UNITED STATES

———

No. 21–511

———

## TIM SHOOP, WARDEN, PETITIONER *v.* RAYMOND A. TWYFORD, III

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[June 21, 2022]

JUSTICE GORSUCH, dissenting.

The Court granted review to decide whether and under what circumstances a federal district court may order a State to transport a prisoner to a hospital for testing. Later, however, it became clear a potential jurisdictional defect threatened to preclude the Court from reaching that question. The District Court's transportation ruling was an interlocutory order, not a final judgment. To address its merits, the Court would first have to extend the collateral order doctrine to a new class of cases. See *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541, 545–547 (1949). In a terse footnote today, the Court does just that. *Ante*, at 5, n. 1.

Respectfully, I would have dismissed this case as improvidently granted when the jurisdictional complication became apparent. We did not take this case to extend *Cohen*. And this Court has repeatedly "admoni[shed]" other courts to keep "the class of collaterally appealable orders . . . 'narrow and selective.'" *Mohawk Industries, Inc.* v. *Carpenter*, 558 U. S. 100, 113 (2009). If anything, this call for caution "has acquired special force in recent years with the enactment of legislation designating rulemaking . . . as the preferred means for determining whether and when prejudgment orders should be immediately appealable." *Ibid.*