In the

# United States Court of Appeals
### For the Seventh Circuit

———————

No. 25-2779

WILLIAM CLYDE GIBSON III,

*Petitioner-Appellee,*

*v.*

RON NEAL,

*Respondent-Appellant.*

———————

Appeal from the United States District Court for
the Southern District of Indiana, Indianapolis Division.
No. 1:23-cv-00330-JMS-MG — **Jane Magnus-Stinson,** *Judge*

———————

ARGUED FEBRUARY 12, 2026 — DECIDED MARCH 31, 2026

———————

Before SCUDDER, LEE, and PRYOR, *Circuit Judges.*

SCUDDER, *Circuit Judge.* William Clyde Gibson III received two death sentences for two separate murders he committed in Indiana. Unsuccessful in challenging those convictions and sentences in Indiana courts on direct appeal and in post-conviction proceedings, Gibson sought relief in federal court under 28 U.S.C. § 2254. But the petition came two years after the filing deadline, prompting the State to move to dismiss.

This appeal comes amidst ongoing proceedings in the district court to determine whether Gibson can show entitlement to equitable tolling to excuse his untimely § 2254 petition. The district court ordered an evidentiary hearing on the question and, in connection with doing so, granted Gibson's request under the All Writs Act to be transported to an Indianapolis hospital for certain mental health testing he sees as pertinent to the equitable tolling inquiry. Believing the transportation order reflected an abuse of discretion, the State invoked the collateral order doctrine and sought our review.

Confident in our jurisdiction, we see the transportation order as substantially, if not irreconcilably, in tension with the Supreme Court's decision in *Shoop v. Twyford*, 596 U.S. 811 (2022). And, even if we are mistaken on that point, Gibson fell short of establishing the required nexus of the requested mental health testing to his pursuit of equitable tolling. So we reverse.

## I

### A

In 2013 an Indiana jury found Gibson guilty of the murder of Christine Whitis and recommended a death sentence. The trial court imposed that sentence and the Indiana Supreme Court affirmed. About eight months later, in a separate proceeding, Gibson pleaded guilty to the murder of Stephanie Kirk, and the trial court again sentenced him to death. The Indiana Supreme Court again affirmed, and in both cases the United States Supreme Court denied review.

Gibson pursued relief in an Indiana post-conviction court, which that court denied. Then the Indiana Supreme Court, in a single opinion, denied relief from the capital sentences,

rejecting Gibson's contentions that his trial counsel provided ineffective assistance in various ways. The Indiana Supreme Court denied rehearing on February 3, 2020.

In addition to his two capital convictions, Gibson pursued relief for a third murder conviction from 2014. He had pleaded guilty in that case, and an Indiana court sentenced him to 65 years' imprisonment. Before us the parties understandably and primarily devote their attention to Gibson's capital cases, which we too use to focus and frame our review of the challenged transportation order.

For Gibson's capital sentences, the one-year deadline for pursuing federal habeas relief, which tolled during his direct appeals and pursuit of state post-conviction relief, began to run when the Indiana Supreme Court declined to rehear Gibson's post-conviction challenge. See 28 U.S.C. § 2244(d). So Gibson had until February 3, 2021 to file a § 2254 petition in federal court.

Prior to the conclusion of Gibson's state post-conviction matters, his attorney contacted Kenneth Murray to ask if he would represent Gibson in the federal habeas corpus proceedings. Murray agreed, leading the district court to appoint him and his co-counsel, Michael Benza, to represent Gibson on May 11, 2020 and June 8, 2020, respectively—when nearly eight months remained to file a § 2254 petition.

Murray and Benza's representation of Gibson began during the COVID-19 pandemic and brought with it challenges. They were unable, for the most part, to visit Gibson in prison, but managed to communicate with him multiple times by phone and electronic messaging.

On January 21, 2021, less than two weeks prior to the statutory deadline, Murray and Benza filed what they styled as a preemptive motion for equitable tolling. The request focused not only on the communication challenges presented by the COVID-19 pandemic, but also on Gibson's mental health, which they believed warranted further investigation. The motion argued that Murray and Benza needed more time for a psychiatric evaluation, a review of Gibson's medical records, and interviews of various unidentified witnesses. The motion requested a one-year extension of the § 2254 filing deadline, from February 3, 2021 to February 3, 2022.

The district court declined to preemptively toll the limitations period. The motion was a procedural oddity, as it sought a one-year extension of time for a deadline that had not yet expired. So the district court denied it as premature, and the deadline remained February 3, 2021.

That deadline came and went without any § 2254 filing. The case went mostly dormant for about eighteen months, with the next relevant event coming in August 2022, when Murray sought to withdraw as counsel for health reasons. Benza withdrew two months later.

On August 9, 2022, the district court appointed Oliver Loewy to represent Gibson in the federal habeas proceedings. Six months later, on February 23, 2023, Loewy filed a § 2254 application on Gibson's behalf. Indiana, through Warden Ron Neal, responded by moving to dismiss the application as untimely, observing that the filing came two years too late. Gibson replied that he should be entitled to equitable tolling and moved for discovery and an evidentiary hearing to support this request. He pointed to the challenges wrought by the pandemic, allegations of misconduct and abandonment by

his prior federal habeas counsel (Murray and Benza), and—as most relevant here—his mental health limitations.

## B

Seeking to develop support for equitable tolling at a possible evidentiary hearing, Gibson also invoked the All Writs Act, 28 U.S.C. § 1651(a), and asked the district court for an order directing his transportation to an Indianapolis hospital for mental health testing. He sought two types of brain scans, "an MRI with Diffusion Tensor Imaging scan and a Positron Emission Tomography scan."

Gibson explained the relevance of the brain scans without much elaboration. He contended that, during the period surrounding the deadline for his § 2254 petition, "his untreated mental health conditions left him unable to manage his legal affairs." He acknowledged and sought to distinguish the Supreme Court's recent decision in *Shoop v. Twyford*, suggesting that the evidence he sought from the brain scans would be admissible in the forthcoming evidentiary hearing on the issue of equitable tolling. See 596 U.S. 811, 823 (2022).

Gibson reinforced his request for a transportation order with declarations from mental health professionals. Dr. Dale Watson, a neuropsychologist who had visited Gibson in prison in February 2025 and conducted various psychological tests, represented that "Gibson likely has white matter integrity problems," which result in deficient information processing and likewise are "associated with depression and cognitive decline." Dr. Watson recommended additional testing, to include the requested brain scans which he stated "would help further determine the nature and extent of Mr. Gibson's

deficits and the effects they have on his cognitive abilities and emotional state."

A second declaration from Dr. R. Andrew Chambers, a professor of psychiatry, explained (based on a review of medical records, a 2017 psychiatric assessment, and a 2025 psychiatric interview) that Gibson suffers "today" from "bipolar disorder, addictive disorders, and a history of significant traumatic brain injury (TBI)." Those conditions result in his "decision-making and emotional stability" being "significantly impaired," with the TBI itself "significantly amplif[ying] those impairments." Dr. Chambers added that Indiana prison officials stopped providing Gibson certain (and perhaps all) psychiatric medication for all or part of 2018 to 2023—a decision that "significantly undermined [Gibson's] ability to manage his affairs, recognize and care [whether he was executed], about his legal rights, and act upon them."

Gibson also submitted a declaration from Dr. Jeffrey Lewine, a professor of translational neuroscience. Dr. Lewine stated that Gibson's history of mental illness likely meant that he suffered from a "brain injury, including the disruption of white matter integrity." The requested brain scan testing, Dr. Lewine continued, "often reveals the likely etiology of the brain abnormalities and their associated timeline."

C

The district court granted Gibson's requests for an evidentiary hearing and discovery. The requested discovery and ensuing hearing, the court reasoned, would flesh out facts relating to the impact of the pandemic, whether the conduct of prior counsel amounted to abandonment, and whether

Gibson's untreated mental health limitations contributed to the untimely § 2254 filing.

As for the transportation order, the district court determined that the requested brain scans were relevant and warranted, as they would allow Gibson "to develop evidence that could be admitted to support equitable tolling of the statute of limitations." Without further elaboration, the court granted the requested transportation order under the All Writs Act.

The State then appealed the transportation order.

## II

We begin with Gibson's contention that we lack appellate jurisdiction. By his account, the transportation order is not a "final decision[] of the district court[]," leaving us without authority to hear Indiana's appeal. See 28 U.S.C. § 1291.

We disagree. In *Twyford* the Supreme Court determined that transportation orders issued under the All Writs Act are immediately appealable under the collateral order doctrine. See 596 U.S. at 817 n.1. Such orders, the Court explained, "(1) conclusively require transportation; (2) resolve an important question of state sovereignty conceptually distinct from the merits of the prisoner's claims; and (3) are entirely unreviewable by the time the case has gone to final judgment." *Id.* (cleaned up).

So, too, here, as the factual and procedural posture is akin to the one before the Court in *Twyford*. In short, our jurisdiction is secure under the narrow confines of the collateral order doctrine. See *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 113 (2009) ("[W]e reiterate that the class of collaterally appealable orders must remain 'narrow and selective in its membership.'" (quoting *Will v. Hallock*, 546 U.S. 345, 350 (2006))); see

also *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–47 (1949).

## III

### A

Congress imposed a one-year timeline for applying for federal habeas corpus relief under the Antiterrorism and Effective Death Penalty Act of 1996. See 28 U.S.C. § 2244(d)(1). But the timeline is not jurisdictional, see *Day v. McDonough*, 547 U.S. 198, 205 (2006), and thus "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling allows for untimely, delayed filings in some circumstances. See *id.* at 649; see also 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1056 (4th ed. 2025) (explaining that "the doctrine of equitable tolling … halts the running of the limitations period" when certain conditions are met).

Gibson may only receive the benefit of equitable tolling upon showing "both that extraordinary circumstances prevented him from timely filing and that he has been diligently pursuing his rights." *Conroy v. Thompson*, 929 F.3d 818, 820 (7th Cir. 2019) (citing *Holland*, 560 U.S. at 649). The Supreme Court has recognized that professional abandonment by an attorney justifies equitable tolling. See *Holland*, 560 U.S. at 651 ("[P]rofessional misconduct" may "amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling."). Abandonment occurs when "an attorney no longer acts, or fails to act, as the client's representative," effectively leaving the represented party to fend for himself. *Maples v. Thomas*, 565 U.S. 266, 281 (2012); see also *id.* at 283 (reasoning, in the context of excusing a procedural

default, that "a client cannot be charged with the acts or omissions of an attorney who has abandoned him"); *Schmid v. McCauley*, 825 F.3d 348, 350 (7th Cir. 2016) (citing *Maples* and acknowledging that "[a]bandonment by counsel is one potentially extenuating circumstance" warranting equitable tolling).

While a petitioner's incompetency alone does not justify an indefinite stay of habeas proceedings, see *Ryan v. Gonzales*, 568 U.S. 57, 76–77 (2013), we have concluded that a proper assessment of abandonment may warrant consideration of the mental health of the petitioner at the relevant times of the representation. See *Schmid*, 825 F.3d at 350 ("[A] prisoner's mental disability in conjunction with abandonment by counsel may justify … toll[ing] the period of limitations."); see also Brian R. Means, *Introduction to Habeas Corpus: A Primer on Federal Collateral Review* 297 (2022) ("Although the Supreme Court has not directly spoken to [using mental illness as a] basis for equitable relief, the legal theory has received considerable attention by lower courts.").

Further, a district court may hold an evidentiary hearing to allow the parties to elicit facts to aid its determination on whether abandonment or other factors weigh in favor of granting equitable tolling. See *Lairy v. United States*, 142 F.4th 907, 917 (7th Cir. 2025) ("A petitioner's burden for receiving an evidentiary hearing is therefore 'relatively light.'" (quoting *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016))).

In ordering an evidentiary hearing here, the district court acted well within its discretion. The remaining question is precise and narrow: whether the district court abused its

discretion in granting Gibson's request for a transportation order under the All Writs Act.

B

Answering the question requires returning to *Shoop v. Twyford*. Raymond Twyford received a death sentence for a murder he committed in Ohio. See 596 U.S. at 814–15. In time he pursued federal habeas relief under § 2254 and, like Gibson, sought an order under the All Writs Act for transportation "to a hospital for medical testing" and brain scans that "could reveal evidence helpful in his effort to obtain habeas corpus relief." *Id.* at 814. The district court granted Twyford's request and the Sixth Circuit affirmed. See *id.* at 816. But the Supreme Court reversed. See *id.* at 824.

The Court determined that "[a] transportation order that allows a prisoner to search for new evidence is not [in the language of the All Writs Act] 'necessary or appropriate in aid of' a federal court's adjudication of a habeas corpus action, 28 U.S.C. § 1651(a), when the prisoner has not shown that the desired evidence would be admissible in connection with a particular claim for relief." *Id.* Even more, the Court focused on the relationship between the evidence sought to be developed through the transportation order and the limitations Congress imposed within the federal habeas statutory scheme, including the restrictions on evidentiary hearings in federal court. See *id.* at 819–20 (first citing 28 U.S.C. § 2254(e)(2)(A) & (B); and then citing *Shinn v. Martinez Ramirez*, 596 U.S. 366, 389–90 (2022)). In particular, where the habeas petitioner failed to develop the factual basis of a claim in state court, a district court "shall not hold an evidentiary hearing on the claim unless" it relies on either "a new rule of constitutional law, made retroactive to cases on collateral review by the

Supreme Court" or "a factual predicate that could not have
been previously discovered through the exercise of due dili-
gence." 28 U.S.C. § 2254(e)(2)(A).

Even then, the Court further emphasized, the petitioner
must show that "the desired evidence would demonstrate 'by
clear and convincing evidence' that 'no reasonable factfinder'
would have convicted him of the charged crime." *Twyford*,
596 U.S. at 819 (quoting 28 U.S.C. § 2254(e)(2)(B)). Those re-
strictions ensure that the All Writs Act cannot be used to al-
low a "prisoner to fish for unusable evidence, in the hope that
it might undermine his conviction in some way." *Id.* at 821.

In addition to pursuing the brain scans to support the mer-
its of certain (preserved) claims for habeas relief, Raymond
Twyford contended it was "plausible" the testing could help
him respond to arguments that other claims were procedur-
ally defaulted. *Id.* at 816. But he did not identify any specific
claims he sought to excuse from default, "nor did he explain
how the testing would matter to his ability to do so." *Id.* at
823. And even if he had, the Court saw no purpose in devel-
oping evidence merely for the purpose of excusing proce-
dural default if that same evidence was ultimately inadmissi-
ble under the stringent requirements of § 2254(e)(2). See *id.*

*Twyford*, in short, requires a nexus between the evidence
sought to be developed through a transportation order en-
tered under the All Writs Act and its relevance and proposed
use and admissibility in the § 2254 proceeding. Stated another
way, any authority conferred by the All Writs Act must be
exercised within the limitations Congress imposed for habeas
relief and the development of evidence to pursue such relief.

## IV

### A

While *Twyford* is amenable to either a broad or narrow reading, the transportation order challenged here falls short under either.

At a broad level, *Twyford* may require that *any* evidence sought to be developed through an order entered pursuant to the All Writs Act "be admissible in connection with a particular claim for relief" under § 2254. *Id.* at 824. Gibson makes no such claim here. Much like Raymond Twyford, he does not attempt to show that the results of any brain scans would support a particular claim for federal habeas relief or, at a more detailed level, satisfy the stringent criteria Congress established for admitting new evidence in a federal habeas proceeding. See 28 U.S.C. § 2254(e)(2)(A) & (B).

Even focusing more narrowly on the forthcoming evidentiary hearing the district court will hold on equitable tolling, Gibson's position comes up short. He fails to connect the evidence sought to be developed from the two brain scans with his request for equitable tolling. Both in the district court and again on appeal Gibson tells us that the scans would further support the argument that his untreated mental health conditions left him "unable to manage his affairs, understand his legal rights, and act upon them." But he never explains to us how. Nowhere has he articulated how the specific mental health testing he seeks would contribute to his request for equitable tolling.

We pressed Gibson's counsel on the point at oral argument but came up empty. For example, counsel—undoubtedly mindful of adverse Supreme Court precedent—did not

contend that the brain scans might show that Gibson was incompetent in the time leading up to the § 2254 filing deadline. See *Gonzales*, 568 U.S. at 76–77 (concluding that incompetence alone is not a basis for indefinitely staying federal habeas corpus deadlines).

Nor did counsel, either in his brief or in oral argument, persuade us that the brain scans were sought to position Gibson to contend that his mental limitations left him unable, upon learning that his former counsel (Kenneth Murray and Michael Benza) intended not to file a timely § 2254 petition, to take matters into his own hands by instructing them to do so or, alternatively, by firing counsel and then acting *pro se* to file a federal habeas application before the February 3, 2021 deadline. Any contention like this would require careful consideration along multiple dimensions, but Gibson has not advanced this position, at least not with sufficient clarity. So we can leave all consideration of it for another day.

Finally, we see no suggestion that Gibson seeks the brain scans to develop an anticipated claim under *Ford v. Wainwright*, 477 U.S. 399 (1986).

No matter how many times we review the record, we return to the same observation: Gibson requested the brain scans to show, as he put it, "that his mental impairments left him unable to manage his affairs, understand his legal rights, and act upon them." But we remain unable to give that statement any specific content. We recognize one of the experts Gibson offered in the district court, Dr. Lewine, explained that the requested brain scan testing "often reveals the likely etiology of the brain abnormalities and their associated timeline." But, again, we do not see how knowing the etiology—the

cause or origin—of his mental limitations informs his position on equitable tolling.

To be certain, we acknowledge that Dr. Watson stated that the additional brain scan testing "would help further determine the nature and extent" of Gibson's deficits and their effect on his "cognitive abilities and emotional state." But we conclude that the All Writs Act requires more—either broadly in terms of the admissibility of such evidence to a claim for relief under § 2254, or narrowly in terms of more particular and specific linkage to Gibson's pursuit of equitable tolling through, for example, a theory of abandonment.

In the final analysis, Gibson remains unable to tie with sufficient particularity—with the directness demanded by the Supreme Court in *Twyford*—the etiology-focused brain scan testing to his claim of abandonment for purposes of equitable tolling or, more broadly, to a claim for ultimate relief under § 2254.

B

Today's decision is narrow and limited to our vacating the transportation order issued pursuant to the All Writs Act. We underscore this point because, when the case resumes in the district court, the next order of business will be the evidentiary hearing on Gibson's plea for equitable tolling. The filings in our court, as well as information we see in the broader record developed in the district court, leave us with the clear impression that Gibson has amassed considerable evidence bearing on the inquiry, including his contention of attorney abandonment. Some of that evidence relates to his mental functioning and indeed limitations in the period leading up to the § 2254 filing deadline, see *Schmid*, 825 F.3d at 350, which

we do not see etiology-focused brain scans as contributing to in any clear or demonstrated way.

In no way do we intend these observations to put a thumb on one side or the other of the forthcoming proceedings in the district court. We leave those proceedings in the skilled and experienced hands of the district judge. With these closing observations, we REVERSE the district court's transportation order and REMAND for further proceedings.